UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 08-CV-0011 (JFB) (AKT)

---

ESTHER KURSCHNER,

Plaintiff,

VERSUS

MASSACHUSETTS CASUALTY INSURANCE CO.
and DISABILITY MANAGEMENT SERVICES, INC.,

Defendants.

---

**MEMORANDUM AND ORDER**
March 3, 2009

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Esther Kurschner ("Kurschner" or "plaintiff") filed the instant action on January 2, 2008 against defendants Massachusetts Casualty Insurance Co. ("Massachusetts Casualty") and Disability Management Services, Inc. ("DMS"), asserting claims arising from defendants' alleged breach of the terms of an insurance policy issued by Massachusetts Casualty to plaintiff and administered by DMS. Specifically, plaintiff asserts the following claims against defendants under New York law: (1) breach of contract; (2) declaratory judgment; (3) consequential damages; and (4) violation of the New York General Business Law ("N.Y. Gen. Bus. Law") § 349. Plaintiff seeks retroactive reinstatement of her monthly disability benefits in accordance with the terms of the policy at issue; a refund of all premiums paid by plaintiff since August 1, 2006; an award of $100,000 for defendants' bad faith conduct; compensatory damages; an award of $1,000 in punitive damages; attorney's fees; and the remaining costs of the instant action.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss plaintiff's fourth cause of action under N.Y. Gen. Bus. Law § 349. Defendant does not seek to dismiss plaintiff's remaining claims. For the reasons set forth herein, defendant's motion is denied.

I. BACKGROUND

A. Facts

The following facts are taken from the amended complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

On November 1, 1997, Massachusetts Casualty issued a Long Term Disability Policy numbered 0652938 to plaintiff, which provided that Massachusetts Casualty would pay plaintiff the amount of $2,575 each month in the event that she became "totally disabled" as defined by the policy. (Amended Compl. ¶¶ 9, 11.) The policy stated that:

> "Total Disability" and "totally disabled" means that due to Injury or Sickness, the Insured:
>
> 1. is substantially unable to perform the material duties of his/her occupation; but, after the Insured's 55th birthday or 120 successive months of total disability for which monthly benefits have been paid, whichever is later, and if such disability continues, the term shall then mean the Insured's substantial inability to perform the material duties of any gainful occupation for which he/she is suited, having due regard: (1) for his/her earning ability from the Policy Date; (2) for his/her education; (3) for his/her training; and (4) for his/her experience; and
>
> 2. Is receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to the Insured.

(*Id.* ¶ 12.) The policy also provided, regarding waiver of premiums, that:

> If total disability begins while this Policy is in force and it lasts 90 or more successive days, while you are so disabled we will waive the amount of the premium, which applies to:
>
> (1) the first such 90 days;
> (2) the time after the first such 90 days, if any, until monthly benefits are payable;
> (3) the time for which monthly benefits are payable; and
> (4) the time beyond which monthly benefits are payable if during such time you are unable to engage in any gainful work or occupation because of such disability.

(*Id.* ¶ 14.)

Massachusetts Casualty is an insurance carrier that markets and provides standard disability income policies like the aforementioned one to individuals such as plaintiff. (*Id.* ¶¶ 72-75.) DMS is a third party administrator for Massachusetts Casualty responsible for the administration and distribution of benefits under the aforementioned policy, as well as similar policies. (*Id.* ¶ 76.) Plaintiff alleges that

2

because Massachusetts Casualty offers and DMS administers standard form insurance policies like her own, their actions are consumer-oriented. (*Id*. ¶¶ 72-76.) When plaintiff first applied for this policy, she was led to believe that Massachusetts Casualty would administer any claims filed thereunder, and had never contracted with or heard of DMS. (*Id*. ¶¶ 69-70.) Plaintiff alleges that the failure of both parties to inform her that DMS would be administering her policy constituted a deceptive business practice. (*Id*. ¶ 71.)

For twenty years, plaintiff was employed as a nurse of J.T. Mather Memorial Hospital, where she worked in the Intensive Care Unit, the Critical Care Unit, and the Emergency Room. (*Id*. ¶¶ 16-17.) In 1997, plaintiff began to suffer from severe allergic rhino conjunctivitis, chronic sinusitis, and asthma, conditions which progressively worsened and often led to bronchitis, despite the treatment of a physician. (*Id*. ¶¶ 22-23.) In early 2002, plaintiff suffered several episodes of sinusitis and asthma exacerbations, during which her treating physician determined that her work environment was causing her pulmonary and allergic conditions to become chronic. (*Id*. ¶¶ 24-25.) Throughout 2003 and 2004, plaintiff suffered further episodes of sinusitis and asthma exacerbations which worsened while at work and, by 2005, she was also suffering high fevers and transient lymphadenopathy. (*Id*. ¶¶ 26-27.) Plaintiff sought treatment from two pulmonologists, a cardiologist, and an ears, nose and throat physician to address her medical issues. (*Id*. ¶ 28.) She proved resistant to various forms of prescribed treatment, including steroids, bronchodilators, antibiotics and antihistamines. (*Id*. ¶ 30.) On January 10, 2005, plaintiff's asthma became so severe that it rendered her unable to function in her occupation as a nurse. (*Id*. ¶ 32.) To date, she remains in the care of several treating physicians. (*Id*. ¶ 36.)

By letter dated April 15, 2005, DMS granted plaintiff's application for disability benefits, stating that the medical records provided "appear to support your current limitations and restrictions." (*Id*. ¶ 39.) Defendants paid plaintiff disability benefits through July 31, 2006 as a "goodwill gesture." (*Id*. ¶ 40.) Since that date, plaintiff has received no further payments. (*Id*. ¶ 41.) By letter dated July 29, 2007, DMS stated that, because the medical records in its possession no longer supported plaintiff's eligibility for disability benefits under the policy at issue, it was closing her claim and reinstating premiums. (*Id*. ¶ 42.) As a result of the termination, plaintiff asserts that she was forced to withdraw funds from her retirement plan, thus losing potential gains earned by those investments and incurring additional taxes. (*Id*. ¶ 59.) Plaintiff has been evicted from her residence and has suffered substantial financial hardship, as well as a lowered credit rating. (*Id*. ¶¶ 62-63.) Plaintiff maintains that these consequential damages were a foreseeable result of the termination of benefits that defendants disregarded. (*Id*. ¶ 60.)

Plaintiff asserts that because she is totally disabled, as defined by the relevant policy provision, defendants' failure to pay her benefits and waive premiums accordingly constitutes a breach of contract. (*Id*. ¶ 43-45.) She further submits that, in terminating her disability benefits, defendants disregarded the additional medical documents that she provided in order to realize the financial benefit from discontinuing the disability payments. (*Id*. ¶¶ 56-58.)

Plaintiff further alleges that defendants

3

wrongfully conspired to delay, deny and refuse to pay disability income insurance policy claims or grant waivers of premium claims under disability insurance policies. (*Id.* ¶ 67.) She maintains that, to that end, defendants utilize review processes and employee incentive programs designed to identify grounds for denying disability claims and termination of previously approved benefits. (*Id.* ¶ 68.) Plaintiff further submits that DMS's corporate mission is to insert itself into contractual relationships between members of the public and various insurance companies and administer insurance claims in an equally dilatory fashion. (*Id.* ¶¶ 78-79.) Plaintiff states that defendants' administration of claims such as her own constitutes morally reprehensible conduct aimed at the general public that has a broad impact on consumers at large who are similarly situated to plaintiff. (*Id.* ¶ 81.) Finally, though the conduct alleged would not give rise to a private right of action under New York Insurance Law § 2601, plaintiff alleges that defendants' actions constitute an unfair claim settlement practice in violation of that statute. (*Id.* ¶ 82.)

B. Procedural History

This action was originally filed in the Supreme Court of the State of New York, Suffolk County, on November 28, 2007. By notice of removal dated January 2, 2008, defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, based on diversity of citizenship between the parties. On April 7, 2008, defendants filed the instant motion. Plaintiff filed her opposition on May 7, 2008. Defendants replied on May 16, 2008. This matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). A claim that is not plausible on its face must be "supported by an allegation of some subsidiary facts to survive a motion to dismiss." *Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, – U.S. – , 127 S. Ct. 1955, 1969 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

III. DISCUSSION

Defendants argue that plaintiff has failed to adequately plead a claim for relief under N.Y. Gen. Bus. Law § 349. For the reasons stated below, the Court disagrees and denies the motion to dismiss plaintiff's claim under Section 349.

N.Y. Gen. Bus. Law § 349 prohibits "deceptive acts or practices in the conduct of any business" within New York State. The statute provides that any individual who has been injured under Section 349 may bring a private action in order to enjoin the alleged unlawful practice, as well as to recover actual damages or fifty dollars, whichever amount is greater. *See* N.Y. Gen. Bus. Law § 349(h).

As the Second Circuit has recently

4

reiterated, "[a] § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Likewise, the New York Court of Appeals has held that "section 349 is directed at wrongs against the consuming public . . . . Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 – whether individuals or [other entities] – must charge conduct of the defendant that is consumer-oriented." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also Vitolo v. Mentor H/S, Inc.*, No. 06 Civ. 1794, 213 Fed. Appx. 16, at *1 (2d Cir. Jan. 3, 2007) (summary order) (citing *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)), *cert. denied by* 128 S. Ct. 77 (Oct. 1, 2007) (No. 06-1506). Once a plaintiff has established that an act is consumer-oriented, the plaintiff must show that "defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744 (citations omitted). For reasons stated *infra*, the Court finds that plaintiff has sufficiently pled all elements of a claim under Section 349.

A. Consumer-Oriented

Construing the facts most favorably to plaintiff, the non-moving party, the Court finds that she has set forth a plausible claim that defendants' acts are "consumer-oriented" within the meaning of N.Y. Gen. Bus. Law § 349. Courts have held that claims meet the consumer-orientation requirement of the statute if "some harm to the public at large is at issue." *Consol. Risk Servs. v. Auto. Dealers WC Self Ins. Trust*, No. 06 Civ. 0871 (FJS/RFT), 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar. 27, 2007) (quoting *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 179 (W.D.N.Y. 2003) (stating that the central issue is whether the practice affects the public interest, not whether the suit was brought by a consumer or a competitor) (internal quotation marks omitted)). Accordingly, "'[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (quoting *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744); *accord DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002). However, the plaintiff need not establish that the defendant engaged in recurring conduct with respect to either a single customer or multiple consumers; rather, the plaintiff must demonstrate that the acts or practices complained of "have a broader impact on consumers at large." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744.

The conduct alleged by plaintiff in this case relates to a number of policyholders who either are, or potentially could be, Massachusetts Casualty and DMS customers, all of whom would be subject to Massachusetts Casualty's standard form insurance policy and DMS's administration of that policy. Specifically, plaintiff alleges that Massachusetts Casualty markets, and DMS administers, a standard form disability policy like her own to thousands of consumers and then utilizes "review processes and employee incentive programs designed to identify grounds for denying disability claims and termination of previously approved benefits."

(Compl. ¶ 68.) Therefore, as alleged by plaintiff, this dispute is not "limited to a challenge regarding coverage made on the basis of facts unique to [a single insured], but relate to consumer-oriented conduct affecting the public at large." *Shebar v. Metro. Life Ins.*, 807 N.Y.S.2d 448, 450 (N.Y. App. Div. 2006) (citations omitted). Where, as here, a defendant allegedly enters into "contractual relationship[s] with customers nationwide" via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, such behavior plausibly affects the public generally and, therefore, plaintiff has sufficiently pled the requirement of "consumer-oriented" conduct within the meaning of Section 349 to survive a motion to dismiss. *See, e.g., M.B.V. Collision, Inc. v. Allstate Ins. Co.*, No. 07 Civ. 0187 (JFB), 2007 WL 2288046, at *4 (E.D.N.Y. Aug. 8, 2007) (defendant's conduct, as alleged, was consumer-oriented because it related to numerous policyholders subject to defendant's standard form policy); *Dekel v. Unum Provident Corp.*, No. 04 Civ. 0413 (DLI)(ETB), 2007 U.S. Dist. LEXIS 17819, at *7 (E.D.N.Y. Mar. 14, 2007) (citing *Binder v. Nat'l Life of Vt.*, No. 02 Civ. 6411 (GEL), 2003 U.S. Dist. LEXIS 8431, at *17 (S.D.N.Y. May 20, 2003) (holding that denial of claims with regard to a standard form insurance policy, "if indicative of a larger practice, will potentially affect the many consumers who hold the same type of policy")); *see also Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding Section 349 applicable to insurers where plaintiffs demonstrated that similar practices had been employed by defendant against multiple insureds); *Joannou v. Blue Ridge Ins. Co.*, 735 N.Y.S.2d 786, 786 (N.Y. App. Div. 2001) ("An insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349.") (citations omitted); *but see N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (declining to find Section 349 violation where insurance policy had been negotiated and was "tailored" to meet the needs of the plaintiff, a large private university); *Perfect Dental, PLLC v. State Farm Mutual Automobile Ins. Co.*, Nos. 04 Civ. 0586, 04 Civ. 0588 (DLI), 2006 U.S. Dist. LEXIS 62226, at *7 (E.D.N.Y. Aug. 31, 2006) ("Courts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage 'are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349.'") (quoting *Depasquale*, 179 F. Supp. 2d at 62) (additional citations omitted).

Although defendant argues that plaintiff has pled only "unsubstantiated buzz words" rather than alleging specific facts to support its claim of consumer-oriented conduct, the Court disagrees. Plaintiff has alleged that defendants purport to administer disability benefits pursuant to a standard form policy but then utilize "review processes and employee incentive programs" intended to deny pending claims and terminate benefits on approved ones. Though plaintiff's claim against defendant may ultimately prove to be a private contract dispute, she has pled a plausible allegation of consumer-oriented conduct sufficient to survive a motion to dismiss and, thus, the Court declines to dismiss her Section 349 claim on the ground that she has not properly alleged the consumer-orientation prong of the statute. *See, e.g., Simon v. Unum Provident Corp.*, No. 07 Civ. 11426 (SAS), 2008 U.S. Dist. LEXIS 47719, at *18-*19 (S.D.N.Y. June 19, 2008) (finding a plausible claim of consumer-oriented conduct where plaintiff alleged that

defendant "entered into a pattern and scheme to defraud the public by offering and issuing" one type of standard form premium disability policies and replacing them with cheaper ones); *Dekel*, 2007 U.S. Dist. LEXIS 17819, at *7 ("The court finds that by entering into contractual relationship with customers nationwide, Unum Provident was engaged in 'consumer oriented' conduct within the meaning of GBL § 349."); *Shebar v. Metro. Life Ins.*, 807 N.Y.S.2d 448, 450 (N.Y. App. Div. 2006) (plaintiff adequately plead "consumer-oriented" requirement of § 349 when "alleg[ing] a specific deceptive practice on the part of defendant, directed at members of the public generally who purchased its standard-form policy, that amounted to a misrepresentation of the nature of the coverage being provided").

B. Deceptive or Misleading Practice

The Court also finds that plaintiff has set forth a plausible claim that defendants "engaged 'in an act or practice that [wa]s deceptive or misleading in a material way and that plaintiff [was] injured by reason thereof.'" *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (N.Y. 1999) (quoting *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744). The New York Court of Appeals has held that, under Section 349, deceptive acts and practices encompass those representations or omissions "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744; *accord Stutman v. Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000). However, a deceptive practice "need not reach the level of common-law fraud to be actionable under section 349," and reliance is not an element of a Section 349 claim. *Stutman*, 731 N.E.2d at 612 (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999)); *Small*, 720 N.E.2d at 897 ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim."); *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 ("[T]he statute does not require proof of justifiable reliance."). Further, courts have determined that, as in the instant action, "'the allegation that the insurer makes a practice of inordinately delaying and then denying a claim without reference to its viability may be said to fall within the parameters of [a deceptive practice].'" *Binder v. Nat'l Life of Vt.*, 2003 U.S. Dist. LEXIS 8431, at *18-*19 (quoting *Acquista v. N.Y. Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (N.Y. App. Div. 2001)); *see also Simon*, 2008 U.S. Dist. LEXIS 47719, at *19-*20 (plaintiff's allegation that defendant insurer offered a premium policy via standard form but then processed such policy as a cheaper, less-inclusive one constituted plausible claim of a deceptive practice under § 349). Moreover, a "[p]laintiff['s] allegations that [his] injury resulted from [defendant's] claim settlement practice and policy violative of [New York Insurance Law § 2601] easily satisfies the elements of a claim under Section 349 . . . ." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 738 (S.D.N.Y. 1990), *aff'd in relevant part*, 977 F.2d 47 (2d Cir. 1992); *see also Saterson v. Planet Ins. Co.*, No. 93 Civ. 6885 (MBM), 1994 U.S. Dist. LEXIS 17497, at *19-*20 (S.D.N.Y. Dec. 8, 1994) (same).

Here, plaintiff has alleged that defendants conspired to "delay, deny and refuse to pay disability income insurance policy claims and waiver of premium claims under disability and life insurance policies," including her own. She further alleges that this conduct constitutes an unfair claim settlement practice in violation of New York Insurance Law §

7

2601.[1] Thus, she has adequately pled that defendants engaged in a deceptive act, such that the complaint survives the instant motion. Further, she has alleged that she was injured by this deceptive conduct, as it resulted in the termination of her disability benefits. Defendants argue that "in the context of administering insurance claims, an insurance company violates GBL § 349 'by selling policies it never intends to honor,'" (Defs.' Memorandum of Law, at 11), and, since plaintiff has not pled as much, she has failed to satisfy the second prong of the § 349 pleading requirement. However, the Court notes that, although such conduct on the part of an insurance provider would constitute a deceptive practice, *see Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126-27 (2d Cir. 2000); *Dekel*, 2007 U.S. Dist. LEXIS 17819, at *6, it is not the *sole* act which does. Indeed, inappropriate delays in processing claims, denials of valid claims, and unfair settlement practices regarding pending claims have all been found under New York law to run afoul of § 349's prohibition on deceptive practices. Accordingly, since plaintiff had pled that defendants delayed, denied and refused to pay disability income insurance policy claims and waiver of premium claims in a pattern of conduct that amounted to unfair claim settlement practices that ultimately resulted in the termination of her benefits, the Court finds that she has successfully satisfied the pleading requirement of Section 349 as it relates to deceptive or misleading practices and injuries incurred therefrom.[2]

In sum, the Court concludes that plaintiff has adequately pled a plausible Section 349 claim that survives a motion to dismiss. Of course, if after the close of discovery the defendants believe that plaintiff does not have sufficient evidence to support a rational jury finding in plaintiff's favor as to each of the elements of a Section 349 claim,

---

[1] New York Insurance Law § 2601 defines unfair claim settlement practice, in relevant part, as "(1) Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue; . . . [or] (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies; . . . ." N.Y. C.L.S. Ins. § 2601 (McKinney's 2008).

[2] As part of the Section 349 claim, plaintiff also alleges that defendants engaged in a deceptive practice in violation of Section 349 by failing to notify her that her claim would be administered by DMS rather than Massachusetts Casualty. (Amended Compl. ¶¶ 69-71.) Defendants argue that any Section 349 claim must fail because plaintiff has not identified any injury that resulted from the alleged deception. Of course, regardless of whether defendants' failure to inform plaintiff that her claim would be administered by DMS amounts to a deceptive practice, this act only gives rise to a viable § 349 action if any injury resulted therefrom. *See Small*, 94 N.Y.2d at 55-56 (rejecting a "deception as injury" theory under § 349); *see also Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 271 (E.D.N.Y. 2007) (same), *opinion withdrawn on other grounds by* 2007 U.S. Dist. LEXIS 89594 (E.D.N.Y. Dec. 3, 2007). However, the failure to assert an injury as to this particular allegedly deceptive act does not warrant dismissal of the entire Section 349 claim. As noted above, the complaint alleges numerous other deceptive practices and very specific injuries arising therefrom, including denial of monthly disability benefits and waiver of premium benefits, being forced to withdraw funds from her 401(k) account (causing lost interest income and tax liability that she otherwise would not have incurred), substantial financial hardship, and the destruction of her credit rating. (Amended Compl. ¶¶ 59-73.) Thus, plaintiff has clearly adequately alleged injuries that resulted from the consumer-oriented, deceptive practices, which is sufficient to survive a motion to dismiss.

defendants will have the ability to move for summary judgment on such claim at that time.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's fourth cause of action under N.Y. Gen. Bus. Law § 361, pursuant to Fed. R. Civ. P. 12(b)(6), is DENIED. The parties shall proceed with discovery forthwith in accordance with the individual rules of Magistrate Judge A. Kathleen Tomlinson.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  March 3, 2009
    Central Islip, New York

\* \* \*

The attorneys for the plaintiff are John W. DeHaan and Paul Michael Kampfer, DeHaan Busse LLP, 300 Rabro Drive, Suite 101, Hauppauge, New York, 11788 . The attorney for the defendants is Norman L. Tolle, Rivkin Radler LLP, 926 RexCorp Plaza, Uniondale, New York, 11556.